**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAYMON FERNANDEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. EDCV 17-1975 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Raymon Fernandez ("Plaintiff") brings this action pro se, seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 12,

13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

**II.**

**PROCEDURAL HISTORY**

On January 23, 2014, Plaintiff filed applications for DIB and SSI alleging a disability onset date of May 10, 2008. (AR 122-23, 137-38, 273-84). The Commissioner denied the applications initially and on reconsideration. (AR 190, 197, 203). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on April 11, 2016. (AR 32-74, 209-10). The ALJ issued an adverse decision on June 22, 2016, finding that Plaintiff was not disabled because he can perform his past relevant work as a cashier, along with other jobs that exist in significant numbers in the national economy. (AR 17-27). On August 10, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3). This action followed on September 28, 2017.

**III.**

**FACTUAL BACKGROUND**

Plaintiff was born on May 14, 1962. (AR 273). He was fifty-three (53) years old when he appeared before the ALJ on April 11, 2016. (AR 32). He earned a high school diploma and an associate's degree in college. (AR 57-58). His work history includes jobs as a warehouse delivery driver and a liquor store clerk. (AR 58-62,

302, 309-14). He alleged disability due to hip replacement, back and neck injuries, and depression. (AR 300).

A.  **Plaintiff's Statements And Testimony**

In an adult function report dated February 10, 2014, Plaintiff alleged that he is unable to work because he cannot "stand, walk, sit, [or] sleep for long"; he "get[s] dizzy and fatigued"; and he experiences "full time pain." (AR 321). He wrote that he generally does household chores on a weekly basis, including sweeping, mopping, vacuuming, laundry and watering plants. (AR 323) He also drives a car, shops for groceries, goes for walks, feeds and bathes his dog and prepares "quick and easy meals." (AR 322-24).

At his April 2016 hearing, Plaintiff testified that he is unable to work because of chronic pain in his spine, neck, hips and shoulders. (AR 36). He stated that the pain varies, so that it is sometimes "just a nuisance," and other times he feels "shooting pain all over the place." (AR 38). On bad days, he takes medication and spends the day "[m]ostly just sitting around." (AR 38-39). He stated that he generally sleeps with a neck brace. (AR 40). His doctor prescribed a cane after his hip surgery, and he had used it a couple time a week, but he had been without a cane for about two months before the hearing. (AR 40-41). He stated that he needs something to lean on when standing for a prolonged period (about fifteen to twenty minutes). (AR 41-42, 50). He can walk for "[u]sually about a block" before needing five or ten minutes of rest, but he did not know if he would be able to sustain

that pace for an eight-hour period. (AR 49-50). He can go up and down stairs. (AR 54-55). He can sit for about thirty minutes straight, but not for an hour. (AR 51). He can lift a gallon of milk. (AR 48-49).

B. **Treatment History**

In April 2008, Plaintiff underwent a hip replacement operation after a slip and fall caused a serious hip injury. (AR 474-75, 485). Following the operation, examinations in 2009 showed reduced range of motion in his right hip. (AR 365, 371, 380). However, X-rays of Plaintiff's lumbar spine on August 3, 2009 were normal. (AR 421). An MRI of the right hip on March 8, 2011 showed that the alignment and position were "satisfactory," with no evidence of hardware complication. (AR 422). The exam also revealed an "[a]pproximately 11 mm region of increased opacity of the left sacrum favored to represent overlying shadows." (AR 422).

In July 2013, Plaintiff suffered injuries to his cervical and lumbar spine in a car accident. (AR 478). MRI examinations of Plaintiff's cervical and lumbar spine on September 19, 2013 showed some hypertrophy, disc protrusion and degeneration, disc space narrowing, spinal stenosis and other irregularities. (AR 426-30).

On March 18, 2014, Azizollah Karamlou, M.D., performed a consultative examination. (AR 474-79). He described Plaintiff as a "well-developed, well-nourished male in no acute distress." (AR 475). He observed that Plaintiff did not need an assistive device

4

to walk, though he was limping due to his past right hip injury and replacement. (AR 476). Dr. Karamlou observed some radiculopathy and "local tenderness with no evidence of muscle spasm" in Plaintiff's cervical and lumbar spine. (AR 476-77). He noted that Plaintiff's cervical spine showed normal range of motion, while the lumbar spine's range of motion was decreased. (Id.). He noted sciatica of the right leg and numbness in two fingers of both hands. (AR 477). Plaintiff's range of motion was also normal in his shoulders, elbows, wrists, hands, knees and ankles, though it was decreased in his right hip. (AR 477). He found that Plaintiff's muscle and grip strength were intact at 5/5. (AR 477). Plaintiff was "able to generate 80 pounds of force using the right hand, and 35 pounds of force using the left hand." (AR 475). Dr. Karamlou opined that Plaintiff can stand and/or walk for six hours and sit for six hours, but he could not walk on uneven terrain, climb ladders or work at unprotected heights. (AR 478). He further opined that Plaintiff can lift twenty pounds occasionally and ten pounds frequently. (Id.).

On periodic appointments with his treating physician in 2014-2016, Plaintiff complained of neck and shoulder pain, but he was observed to be in no acute distress, with normal gait and range of motion. (AR 485-86, 494-501). On January 9, 2016, an x-ray of his left shoulder was normal. (AR 487).

C.   **State Agency Consultants**

On April 22, 2014, state agency medical consultant H. Ly reviewed Plaintiff's medical records and opined that he can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours. (AR 132-33, 147-48). H. Ly further opined that Plaintiff cannot climb ladders but occasionally can climb ramps or stairs, balance, stoop, kneel, crouch and crawl. (AR 133, 148). On July 23, 2014, another state agency medical consultant, K. Beig, M.D., reviewed Plaintiff's records and concurred with H. Ly's assessment. (AR 164-65, 178-79).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an

affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20-27). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 10, 2008, the alleged onset date. (AR 20). At step two, the ALJ found that Plaintiff had the following severe

impairments: osteoarthritis, status post total right hip replacement; chronic back pain; and chronic neck pain. (Id.). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (AR 21).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[1] with the following limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight-hour workday; stand/walk for six hours out of an eight hour workday; push/pull within the weight limitations; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] is precluded from walking on uneven terrain; climbing ladders, ropes, and scaffolds; and working at unprotected heights.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

9

(AR 22). At step four, the ALJ found that Plaintiff can perform past relevant work as a cashier. (AR 25). Alternatively, at step five, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, including assembler, inspector and marker. (AR 25-26). Accordingly, the ALJ determined that Plaintiff has not been disabled since his alleged onset date of May 10, 2008. (AR 26).

## VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that

detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff contends that the ALJ failed to (1) conduct a proper RFC assessment and (2) properly consider the applicability of Listing 1.03. (Dkt. No. 22 at 2-10). The Court addresses each contention below.

**A. The ALJ's RFC Assessment Is Supported By Substantial Evidence**

Plaintiff asserts that the ALJ failed to properly consider all of the relevant medical findings and explain "material inconsistencies" between the medical evidence and the ALJ's RFC finding. (Dkt. No. 22 at 2-5). Plaintiff argues that the RFC conflicts with the medical evidence specifically because the evidence "demonstrates that Plaintiff suffers from debilitating low back, neck, and right hip impairments." (Id. at 3). The Court disagrees that the RFC lacks substantial evidence.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including Plaintiff's subjective symptoms, and the RFC assessments made by consultative examiners, State agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513a, 416.913a; Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Here, in assessing Plaintiff's condition, the ALJ provided a detailed discussion of the medical evidence and opinions, along with Plaintiff's subjective testimony. (AR 22-25). The ALJ noted, for example, that despite allegations of chronic pain, "the record showed only conservative treatment of medications and therapy." (AR 23). She acknowledged that examinations showed that Plaintiff walked with a limp and had decreased range of motion, spinal tenderness, radiculopathy and sciatica. (AR 24). However, she also noted that Plaintiff was in no acute distress, did not require

12

an assistive device, and had intact motor strength and grip strength. (AR 24). Moreover, the ALJ considered Plaintiff's everyday activities, which included driving, shopping for groceries, preparing simple meals, sweeping, mopping, doing laundry, watering plants, caring for multiple dogs and cleaning the yard. (AR 22-23). The ALJ reasonably found such activities consistent with the assessed RFC. (AR 23).

The ALJ's RFC determination is supported by substantial evidence. This includes the consistent opinions of consultative examining physician Dr. Karamlou and the non-examining consultants. (AR 132-33, 147-48, 164-65, 178-79, 474-79); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[The consultative examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]."); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of nontreating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). The ALJ found these opinions to be consistent with the objective evidence. (AR 24-25). She therefore largely adopted the opinions, while also including some additional postural limitations based on the evidence and Plaintiff's subjective testimony. (Id.).

Plaintiff does not point to any medical opinion in the record that conflicts with these assessments, nor does he identify any significant evidence that the ALJ failed to consider. While Plaintiff may interpret the medical record differently, "[w]here

13

evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC). As the RFC was supported by substantial evidence in the record, including Plaintiff's own subjective testimony, the ALJ's decision must be upheld.

**B.   Plaintiff's Impairments Do Not Meet Or Medically Equal Listing 1.03**

Plaintiff contends that he meets or medically equals the requirements of Listing 1.03. (Dkt. No. 22 at 5-10). He asserts that he qualifies based on the ALJ's findings that he has a severe impairment of osteoarthritis, status post-right hip replacement, and is precluded from walking on uneven terrain. (Id.). The Court disagrees.

At the third step of the five-step process, the ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is presumed disabled and benefits are awarded. See Yuckert, 482 U.S. at 141; Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995), as amended (Apr. 9, 1996). A claimant has the burden to show that his condition meets or equals an impairment set forth in the Listing.

See Tackett, 180 F.3d at 1098. To meet a listed impairment, a claimant must demonstrate that he meets each characteristic of a listed impairment relevant to his claim and must have every finding specified in the listing. See id. at 1099; 20 C.F.R. § 416.925(d). To equal a listed impairment, a claimant must establish "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)); see also 20 C.F.R. § 416.926(a).

"[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). However, "Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under [a particular] heading . . . ." Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001). Moreover, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); see also Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (same).

Listing 1.03 is defined as reconstructive surgery or surgical arthrodesis of a major weight-bearing joint "with inability to ambulate effectively, as defined in 1.00B2b, and return to

15

effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03.  An "inability to ambulate effectively" means

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1).

Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations.  (AR 21).  The ALJ did not specifically address Listing 1.03 or any other particular listing.  (Id.).  Plaintiff contends that the ALJ failed to "provide the proper analysis in her decision to support this finding or she more than likely would have determined that plaintiff did indeed meet [Listing 1.03]."  (Dkt. No. 22 at 6).  Plaintiff points particularly to the fact that the regulations include "the inability to walk a block at a reasonable pace on rough or uneven surfaces" among the "examples of ineffective ambulation."  (Id. at 7 (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2)).  Specifically, the regulations state:

> [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, <u>the inability to walk a block at a reasonable pace on rough or uneven surfaces</u>, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2) (emphasis added).

Plaintiff has not met his burden of demonstrating that he meets each characteristic of Listing 1.03. The ALJ's detailed discussion of the record adequately supports the finding that Plaintiff did not meet the criteria of Listing 1.03 or any other listing, and no more specific discussion was required. See Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) ("[T]he ALJ adequately addressed the third step of the evaluation, given that [the claimant] never presented evidence or advanced an argument for equivalency"). The ALJ noted, for example, that Plaintiff walks without an assistive device, shops for groceries, sweeps and mops the house, and does some yard work. (AR 22-23). The ALJ also correctly observed that no physician found that Plaintiff met any

listing. (AR 21). Consultative examiner Dr. Karamlou and the agency consultants instead opined that Plaintiff can perform light work, (AR 132-33, 147-48, 164-65, 178-79, 474-79), and the ALJ reasonably found this consistent with the record as a whole. (AR 24-25).

While the ALJ precluded Plaintiff from jobs that require "walking on uneven terrain," (AR 22), that is not tantamount to an "inability to walk a block at a reasonable pace on rough or uneven surfaces" so as to qualify Plaintiff for Listing 1.03. Plaintiff clearly maintained an ability to walk without assistance on some rough or uneven surfaces, such as his yard, even if his limitations precluded sustained full-time work involving such conditions. Plaintiff has not shown "an <u>extreme limitation</u> of the ability to walk," such that he requires the use of an assistive device that "limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1). Accordingly, Listing 1.03 is not satisfied and remand is not required.

# VIII.

# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on Plaintiff and counsel for Defendant.

DATED: July 5, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**